570 S.E.2d 549

**Diana MULLIS, M.D., Respondent,**

**v.**

**TRIDENT EMERGENCY PHYSICIANS, a South Carolina general partnership, Appellant.**

No. 3548.

Court of Appeals of South Carolina.

Submitted May 20, 2002.
Decided Sept. 9, 2002.
Rehearing Denied Oct. 22, 2002.

G. Dana Sinkler, of Charleston;  for Appellant.

E. Paul Gibson and Allison A. Stover, both of N. Charleston; for Respondent.

PER CURIAM.

Diana Mullis filed this action for conversion against Trident Emergency Physicians (Trident).  A jury awarded Mullis $20,000 in actual damages.  Trident moved for judgment notwithstanding the verdict arguing Mullis failed to establish a cause of action for conversion as a matter of law.  By order

dated June 20, 2000, the trial court denied Trident's motion finding Mullis sufficiently proved conversion. The trial court also denied, in relevant part, Trident's subsequently filed motion for reconsideration. Trident appeals.

## FACTS

Mullis is a medical doctor practicing emergency medicine and psychiatry. In February or March of 1993, Trident hired Mullis as an emergency room physician at Trident Hospital in North Charleston, South Carolina. Mullis testified she was told at the time of hiring that Trident would withhold 10% of her salary to cover administrative expenses. When Mullis received her paycheck in May of 1993, she noticed an additional 10% was withheld. Mullis testified Trident's partners, Drs. Malaney and Cook, informed her the extra 10% would be withheld until a total of $20,000 was collected. The $20,000 would then be used as a "buy-in" to pay for Mullis' share in the Trident partnership. Trident withheld the extra 10% through November of 1994 until $20,000 had been withheld from Mullis' pay.

In May of 1995, the Trident partners voted against making Mullis a partner. When Mullis requested her $20,000, the partners refused to return the money. They informed Mullis the money was allocated among the partners. At that time, the partners showed Mullis a "Partnership Agreement" explaining that Trident would withhold 10% of an associate doctor's pay up to $20,000, which would be payable to the partnership. The Partnership Agreement provides that an associate doctor is entitled to 90% of his net pay until $20,000 is collected, which "shall be payable to the Partnership and considered net profits thereof." The agreement further provides: "Once the Partnership has received $20,000 from the net collections of an Associate ... and [such Associate] has completed three (3) years of service, such Associate shall be eligible to become a Partner."

Mullis repeatedly requested Trident refund the $20,000 and continued working for Trident until November of 1996, when she left for health reasons. Eventually, Mullis hired an attorney to assist her in obtaining a refund of the money. By letter dated March 31, 1998, Trident acknowledged they had

refunded $20,000 to another associate, but claimed it "was a special case." Trident acknowledged the money as a "buy-in" but refused to refund the money relying on the Partnership Agreement and claiming there was "no stipulation for refunding the buy-in."

Dr. Malaney testified at trial that, upon hiring, new employees receive an employment agreement with Trident, an informational packet, the Partnership Agreement, and a credentialing packet. Malaney stated she "believed" she gave a complete packet, including the Partnership Agreement, to Mullis at hiring. Malaney also claimed she discussed the Partnership Agreement at length with Mullis, as they were friends. Malaney admitted she had no written record that she gave the Partnership Agreement to Mullis upon hiring. Moreover, although Mullis signed an agreement to be bound by the terms of the agreement with Trident, she signed no agreement to be bound by the terms of the Partnership Agreement. According to Malaney, at least seven associates had paid the $20,000 without either becoming partners or receiving a refund of the money.

Both parties moved for a directed verdict. The trial court denied the motions. The jury entered a verdict for Mullis of $20,000 in actual damages. The jury did not award punitive damages. Trident moved for judgment notwithstanding the verdict. The trial court denied the motion.

## LAW/ANALYSIS

Trident argues the trial court erred in denying its motion for judgment notwithstanding the verdict on the basis Mullis failed to prove the elements of a conversion. Trident alleges Mullis' consent to the withholding, and the failure to prove an identifiable fund, prevent her from establishing conversion. We disagree.

First, we find the question of Mullis' consent was properly for the jury. *See Fredericks v. Commercial Credit Co.*, 145 S.C. 380, 387, 143 S.E. 179, 181 (1928) (finding question of consent in an action for conversion a matter for the jury).

Next, we find Mullis need not specifically identify the money as a separate and distinct account. "Conversion" is

defined as the unauthorized assumption and exercise of the rights of ownership over goods or personal chattels belonging to another, to the alteration of their condition or to the exclusion of the rights of the owner. *Green v. Waidner,* 284 S.C. 35, 37, 324 S.E.2d 331, 333 (Ct.App.1984). *See Owens v. Andrews Bank & Trust Co.,* 265 S.C. 490, 496, 220 S.E.2d 116, 119 (1975) (Conversion may arise by the illegal detention of another's property.). "There can be no conversion of money unless there is an obligation on the defendant to deliver a specific, identifiable fund to the plaintiff." *Richardson's Rests., Inc. v. Nat'l Bank of S.C.,* 304 S.C. 289, 294, 403 S.E.2d 669, 672 (Ct.App.1991). Money, however, may be the subject of conversion if "it is capable of being identified and there may be conversion of determinate sums even though the specific coins and bills are not identified." *SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 498, 392 S.E.2d 789, 792 (1990).

We find Mullis need not specifically identify the money as a separate and distinct account under *SSI Med. Servs.* The buy-in amount was a determinative sum. The fact that the partnership commingled the money does not change its nature as a determinative sum.

Accordingly, the order on appeal is **AFFIRMED.**

HEARN, C.J., CURETON and SHULER, JJ., concur.