THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), 
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Michael Andrew Maples,       
Appellant.
 
 
 

v.

 
 
 
Donald V. Myers and Samuel R. Hubbard, III and Wayne Wilson,       
Respondents.
 
 
 

Appeal From Lexington County
Marc H. Westbrook, Circuit Court Judge

Unpublished Opinion No. 2004-UP-364
Submitted June 8, 2004  Filed June 
 10, 2004

AFFIRMED

 
 
 
Michael A. Maples, of West Columbia, for Appellant.
Lake E. Summers and Thomas C. R. Legare, Jr., both of Columbia; 
 and Vinton DeVane Lide, of Lexington, for Respondents.
 
 
 

PER CURIAM:  Michael Andrew Maples (Appellant) 
 appeals a circuit court order granting summary judgment in favor of Donald V. 
 Myers, Samuel R. Hubbard, III, and Wayne Wilson (collectively Respondents) 
 dismissing all of Appellants claims against them.  We affirm. 
FACTS
This matter arises from the seizure of Appellants 
 1988 Pontiac Firebird and a number of weapons in connection with his arrest 
 on multiple charges including Trafficking in Marijuana and Trafficking in 
 Marijuana Within Proximity of a School.
On April 22, 1995, respondent Wayne Wilson, then 
 Chief of Police for the town of South Congaree, was informed a citizen had discovered 
 a number of small cups containing plants which he believed were marijuana while 
 walking in a wooded area within town limits.  Later that day, a South Carolina 
 Law Enforcement Division (SLED) agent accompanied Wilson to the site.  On 
 April 25, SLED agents set up a motion activated video camera at the grow site.  
 During this period of video surveillance, Appellant visited the area several 
 times and tended to the marijuana plants.  On June 7, one hundred and ninety-four 
 (194) marijuana plants were confiscated from the grow site.  During the search 
 of the area, an army duffel bag was found containing an M-1 rifle and ammunition.
Following the seizure of the marijuana crop, SLED 
 agents arrested Appellant in West Columbia and transported him to the South 
 Congaree Police Department.  After the arrest, other SLED agents took custody 
 of Appellants personal vehicle, a 1988 Pontiac Firebird, at his place of work 
 in Richland County and towed it to the South Congaree Police Department. 
 [1]   
While in custody and after being advised of his rights, 
 Appellant voluntarily executed a detailed written statement.  In the statement, 
 Appellant admits he germinated marijuana seeds and hauled the germinated seeds, 
 plant food, and potting soil to the grow site in his Pontiac Firebird.  He told 
 Wilson he germinated the marijuana seeds in his bedroom.  Appellant also admitted 
 his involvement in three earlier shooting incidents, one in which Appellant 
 fired the weapon found at the grow site seven times into an occupied mobile 
 home.  Following the statement, Appellant gave Wilson written consent to search 
 his padlocked bedroom in his mothers home.  In the course of this search, seven 
 loaded weapons were found and seized.  On June 8, 1995, Wilson filed an Initial 
 Report of Seizure covering the property seized from Appellants bedroom.  On 
 June 14, he filed a similar report concerning Appellants vehicle.  The solicitors 
 office, however, did not file a final forfeiture complaint against any of this 
 property until May 2000, almost five years after the propertys seizure.  
Appellant was indicted by the grand jury for Manufacturing 
 and Possession of Marijuana With Intent to Distribute Within Proximity of a 
 School and Trafficking in Marijuana in violation of South Carolina Code section 
 44-53-370(e)(1)(b).  Although Appellant pled guilty to the proximity charge, 
 the trafficking charge was pled down to Manufacturing in Marijuana 2nd.  
 For these offenses, Appellant was sentenced to a total of seven years imprisonment. 
 He later pled guilty to discharging a firearm into a dwelling and three counts 
 of assault with intent to kill, for which he received two consecutive ten-year 
 prison terms.
In 1998, Appellant brought a civil action against Wilson, 
 both individually and in his official capacity as chief of the South Congaree 
 Police Department, alleging unlawful conversion of the above mentioned seized 
 property.  After several amendments to his original complaint, Appellant served 
 Respondents with the final version of the underlying lawsuit in June 2000.  
 The final complaint, among other claims, added Respondents Donald V. Myers, 
 circuit solicitor, and his assistant, Samuel R. Hubbard, III, as new defendants 
 under a theory of civil conspiracy.  The thrust of Appellants lawsuit appeared 
 to be that Wilson improperly seized his vehicle and weapons, and, by failing 
 to comply with the forfeiture statutes in a timely manner, Respondents conspired 
 to deprive Appellant of his property and are liable for conversion.
In November 2000, Wilson moved for summary judgment 
 on all causes of action.  Following a grant of this motion, Appellant filed 
 a motion to alter or amend the judgment.  In June 2001, while Appellants motion 
 was pending, Myers and Hubbard filed their own motion for summary judgment.  
 Wilson joined this motion, as it pertained to issues raised against him in Appellants 
 pending motion to alter or amend.  Following a combined hearing on both motions, 
 summary judgment was granted to Myers and Hubbard and Appellants motion to 
 alter or amend was dismissed.  This appeal follows.
STANDARD 
 OF REVIEW
The purpose of summary judgment is to expedite the 
 disposition of cases which do not require the services of a fact finder.  Dawkins 
 v. Fields, 354 S.C. 58, 69, 580 S.E.2d 433, 438 (2003); George v. Fabri, 
 345 S.C. 440, 452, 548 S.E.2d 868, 874 (2001).  When reviewing the grant of 
 a summary judgment motion, this court applies the same standard which governs 
 the trial court under Rule 56(c), SCRCP: summary judgment is proper when there 
 is no genuine issue as to any material fact and the moving party is entitled 
 to judgment as a matter of law.  Laurens Emergency Med. Specialists, P.A. 
 v. M.S. Bailey & Sons Bankers, 355 S.C. 104, 108-9, 584 S.E.2d 375, 
 377 (2003); Fleming v. Rose, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002).  
 In determining whether any triable issue of fact exists, the evidence and all 
 factual inferences drawn from it must be viewed in a light most favorable to 
 the nonmoving party.  Sauner v. Public Serv. Auth. of South Carolina, 
 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003); Hendricks v. Clemson Univ., 
 353 S.C. 449, 455-56, 578 S.E.2d 711, 714 (2003).  
DISCUSSION
Appellant raises several issues on 
 appeal, all ostensibly pertaining to his underlying claims against Respondents 
 for the illegal conversion of the above mentioned seized property, allegedly 
 perpetuated by civil conspiracy.  Conversion is an unlawful act defined as the 
 unauthorized assumption and exercise of the rights of ownership over 
 goods or personal chattels belonging to another . . . to the exclusion of the 
 owners rights.  Powell v. A.K. Brown Motor Co., 200 S.C. 75, 78, 20 
 S.E.2d 636, 637 (1942); Green v. Waidner, 284 S.C. 35, 37, 324 S.E.2d 
 331, 333 (Ct. App. 1984) (emphasis added).  The tort of conversion, therefore, 
 cannot spring from the exercise of a legal right.  Steele v. Victory Sav. 
 Bank, 295 S.C. 290, 296, 368 S.E.2d 91, 94 (Ct. App. 1988).  Appellant asserts, 
 due to several alleged statutory violations, the seizure and subsequent forfeiture 
 of his property was not a proper exercise of Respondents legal rights, and 
 therefore, each is personally liable for the conversion of his property.  We 
 disagree.
I.       Civil Conspiracy
Appellant seems to contend that each respondent 
 is individually liable for the acts of the other respondents under a theory 
 of civil conspiracy.  We find this theory of imputation without merit.
In South Carolina a civil conspiracy requires: (1) 
 a combination of two or more persons; (2) for the purpose of injuring the plaintiff; 
 (3) which cause the plaintiff special damages.  Vaught v. Waites, 300 
 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct. App. 1989).  [I]n order to establish 
 a conspiracy, evidence, direct or circumstantial, must be produced from which 
 a party may reasonably infer the joint assent of the minds of two or more parties.  
 Island Car Wash, Inc. v. Norris, 292 S.C. 595, 601, 358 S.E.2d 150, 153 
 (Ct. App. 1987).  
Appellant failed to provide any evidence from which 
 one could infer a meeting of the minds between Respondents.  In fact, the only 
 alleged communication of any kind between Wilson and the Solicitors Office 
 is the statutorily required seizure notice.  Notwithstanding this courts standard 
 of review, an argument based on mere suggestion and speculation should not survive 
 a motion for summary judgment when no evidence is presented which creates a 
 material issue of fact on the issue.  See Rule 56(e), SCRCP.  We therefore 
 agree with the trial court in that, as a matter of law, the conspiracy claim 
 must fail.  As such, we address the possible personal liability of Myers and 
 Hubbard (circuit solicitor and assistant solicitor who commenced final forfeiture 
 proceedings against Appellants property) separately from that of Wilson (sheriff 
 who initially seized the property).
II.      Personal Liability of Myers and Hubbard
Appellant contends that Myers and 
 Hubbard are personally liable for the value of his seized property because 
 the final proceedings for forfeiture were commenced in an untimely fashion.  
 We disagree.  
There is no need to address the merits of Appellants 
 various assertions that the proper statutory forfeiture procedures were not 
 followed to the letter.  It is uncontested that section 44-53-530 grants the 
 solicitors office the power to petition the circuit court for the forfeiture 
 of property seized under 44-53-520.  S.C. Code Ann. § 44-53-530 (2002) ((a) 
 Forfeiture of property defined in Section 44-53-520 must be accomplished by 
 petition of . . . the circuit solicitor or his designee). As such, Myers and 
 Hubbard, when commencing the final forfeiture proceedings, were acting solely 
 in their official, not personal, capacities.
Even assuming the efficacy of the alleged 
 statutory violations (namely that Myers and Hubbard purposefully delayed in 
 commencing final forfeiture proceedings against Appellants property in violation 
 of section 44-53-520 and various statutes of limitation 
 [2] ), because Myers and Hubbard acted in no way outside their official 
 capacities as prosecutorial agents of the State, they enjoy an absolute immunity 
 from civil suits.  See Williams v. Condon, 347 S.C. 227, 553 S.E.2d 
 496 (Ct. App. 2001) (discussing in great length the history, policy and modern 
 application of prosecutorial immunity from civil liability).  While we do not 
 in any way condone the solicitors offices undue delay in bringing final forfeiture 
 proceedings following the propertys seizure, Appellant states no plausible 
 grounds in his pleadings for Myers or Hubbards personal liability for the value 
 of Appellants property.
Appellant seems to assert on appeal, albeit 
 vaguely, that he is statutorily provided a remedy by South Carolina section 
 44-56-586, which reads as follows:

(a) Any innocent owner . . . may apply to court of 
 common pleas for the return of any item seized under the provisions of § 44-53-520.

* * * * *

(b) The court may return any seized item to the owner 
 if the owner demonstrates to the court by a preponderance of the evidence:
(1) in the case of an innocent owner, that the person 
 or entity was not a consenting party to, or privy to, or did not have knowledge 
 of, the use of the property which made it subject to seizure and forfeiture.

S.C. Code Ann. § 44-53-586 (2002). 
Section 44-53-586 lends Appellant no support.  
 First, it would border on frivolity to suggest Appellant qualifies as an innocent 
 owner.  Second, nothing in this section grants an owner a civil cause of action 
 for damages against state agents for carrying out the forfeiture proceedings 
 on behalf of the State.  As such, we conclude the trial courts grant of summary 
 judgment to respondents Myers and Hubbard was proper. [3] 
III.    Personal Liability of Wilson
We first make note that none of Appellants 
 issues concerning the final forfeiture proceedings against his property properly 
 apply to Wilson.  It is specifically provided in the first sentence of section 
 44-53-530 that forfeiture proceedings must be accomplished by petition of the 
 Attorney General or his designee or the circuit solicitor or his designee.  
 S.C. Code Ann. § 44-53-530 (2002). Accordingly, because Wilson did not have 
 authority to institute forfeiture proceedings, he could not have any duty to 
 do so nor any liability to Appellant for failure to do so in a timely manner.
However, as Appellant, again rather vaguely, appears 
 to argue Wilson is liable for conversion and concomitant damages arising from 
 the unlawful seizure of his property, we address legality of that seizure.  
 See Steele, 295 S.C. at  296, 368 S.E.2d at 94 (Ct. App. 1988)(holding 
 that conversion cannot arise from the exercise of a legal right).
Appellant contends that the initial seizure of his 
 property was unlawful because: 1) no finding was made as to the weight of the 
 marijuana; 2) there was no probable cause to seize the weapons found in his 
 bedroom; and 3) his vehicle was towed from a location outside of respondent 
 Wilsons jurisdiction.

A.      Weight of Marijuana

Appellant argues that his vehicle 
 was unlawfully seized because the State failed make a finding as to the weight 
 of the marijuana found at the grow site prior to the vehicles seizure.  Appellants 
 property was seized pursuant to South Carolina Code section 44-53-520(b), which 
 reads:
Any property subject to forfeiture under this article 
 may be seized . . . Seizure without process may be made if . . . (4) the department 
 has probable cause to believe that the property was used or is intended to be 
 used in violation of this article.
S.C. Code Ann. § 44-53-520(b) (2002).  Appellant contends 
 Wilson had no probable cause to seize the vehicle because, without a determination 
 of the marijuanas weight, the property was not determinatively used . . . 
 in violation of [the] article.  
Appellant erroneously bases this argument on the following 
 language of section 44-53-520, the statute which makes certain property subject 
 to forfeiture to the State when used to facilitate the production, manufacturing, 
 distribution, sale, importation, exportation, or trafficking of controlled 
 substances:
No motor vehicle may be forfeited to the State under 
 this item unless it is used, intended for use, or in any manner facilitates 
 a violation of Section 44-53-370(a), involving at least one pound or more of 
 marijuana . . .
S.C. Code Ann. 44-53-520 (2002).  Appellant, however, 
 overlooks the fact that this statute, continues to read  . . . or unless 
 it is used . . . or in any manner facilitates a violation of Section 44-53-370(e).  
 Id. (emphasis added)
Section 44-53-370(e) defines the offense 
 of trafficking in marijuana as the cultivation of one hundred to one thousand 
 marijuana plants regardless of weight.  S.C. Code Ann. 44-53-370(e)(1)(b) (2002).  
 In his written statement, Appellant confessed to the cultivation of approximately 
 200 marijuana plants and the specific use of his vehicle in facilitating such.  
 A signed written statement confessing to a charged offense as well as specifically 
 outlining the use of certain property in facilitating that offense certainly 
 provided the police with section 44-53-520s requisite probable cause for the 
 propertys seizure.  Because Appellants vehicle was seized pursuant to the 
 forfeiture statutes reference to 44-53-370(e)(1)(b) and not 370(a) (which is 
 limited to only those offenses involving at least one pound of marijuana), a 
 finding of the plants actual weight was unnecessary. 

B.      Probable Cause to Seize the Weapons Found 
 in Appellants Bedroom

Appellant argues that the seizure 
 of the weapons and other items from his bedroom was unlawful because Wilson 
 lacked probable cause to seize the items.  Again, Appellants own confession 
 went beyond the threshold of probable cause in regard to the propertys use 
 in facilitating a violation of 44-53-370(e).
Appellant admitted in writing to cultivating 
 the marijuana found at the grow site.  He stated to Wilson that the germination 
 of the crop, mentioned in the written statement, took place in his bedroom.  
 He also admitted to involvement in three shooting incidents involving firearms 
 located in the bedroom.  Furthermore, Appellant agreed in writing to allow a 
 search of the padlocked bedroom (located in his parents home).  The mere probability 
 that a crime is being committed [or, as here, that property is being used in 
 furtherance of a crime], rather than a prima facie showing of criminal [use], 
 is the standard probable cause.  State v. Dean, 282 S.C. 136, 139, 317 
 S.E.2d 744, 745 (1984).  The above confession and the location of the weapons 
 in such close proximity to the admitted germinating area of the marijuana crop 
 provided Wilson with requisite probable cause that the items were subject to 
 forfeiture under section 44-53-520, thus, their seizure was proper.

C.      The Towing of the Vehicle

Appellant also argues Wilson personally 
 towed Appellants vehicle from an area outside of Wilsons jurisdiction, thus, 
 he is liable in an individual capacity for the conversion of Appellants vehicle.  
 We find this argument without merit.  
According to Wilson, SLED agents towed Appellants 
 vehicle to the South Congaree Police Department, where Wilson later executed 
 a seizure report.  Appellant submitted no evidence at the hearing to refute 
 Wilsons account of the towing.  His assertions as to Wilsons personal actions 
 are, in fact, pure speculation as Appellant was in custody at the time of the 
 towing.  Furthermore, Appellants argument that Wilsons alleged behavior gives 
 rise to personal liability is wholly conclusory, as Appellant cites no authority 
 for this position.  See Glasscock, Inc. v. U.S. Fidelity & Guar. 
 Co., 348 S.C. 76, 557 S.E.2d 689 (Ct. App. 2001) (South Carolina law clearly 
 states that short, conclusory statements made without supporting authority are 
 deemed abandoned on appeal and therefore not presented for review.)  Finally, 
 Appellants unlawful jurisdiction theory in regard to Wilsons alleged towing 
 of the Firebird is raised for the first time on appeal, thus unpreserved for 
 out review.  See Fraternal Order of Police v. South Carolina Dept 
 of Revenue, 352 S.C. 420, 435, 574 S.E.2d 717, 725 (2002) (Generally, claims 
 or defenses not presented in the pleadings will not be considered on appeal.)
CONCLUSION
The grant of summary judgment in favor 
 of Respondents is
AFFIRMED.
ANDERSON, HUFF, and KITTREDGE, JJ., concur.

 
 
 [1]        Appellant asserts that Wilson, not SLED, personally towed 
 the vehicle. 

 
 
 [2]        S.C. Code Ann. § 44-53-520 (2002) (In the event of seizure 
 pursuant to subsection (b), proceedings under § 44-53-530 regarding forfeiture 
 and disposition must be instituted within a reasonable time); see 
 also S.C. Code Ann. § 15-3-550 (Supp. 2003).

 
 
 [3]        As our grounds for affirming the trial court are not precisely 
 those raised by Respondents briefs, we cite Rule 220(c), SCACR, and IOn, 
 L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 420-21, 526 S.E.2d 716, 
 724 (2000), for the proposition that an appellate court any affirm the lower 
 courts judgment for any reason appearing in the record.