*365 MOORE, Judge.
Dusty Polk and Lezanne Proctor sued Leslie Polk and Polk Plumbing, LLC (“the LLC”), asserting, among others, claims of breach of fiduciary duty. Leslie and the LLC counterclaimed against Dusty and Lezanne, asserting, among others, claims of conversion. The case was tried before a jury; only Dusty’s and Lezanne’s breach-of-fiduciary-duty claims against Leslie and the LLC’s conversion claim against Dusty were submitted to the jury.[1] The jury found in favor of Dusty and Lezanne on their claims against Leslie and awarded each of them $1 in compensatory damages; the jury found in favor of Dusty on the LLC’s counterclaim. The trial court entered a judgment on the jury’s verdict.
Dusty and Lezanne moved for a new trial, asserting, among other things, that the jury’s award of compensatory damages to them was inadequate based upon the evidence presented at the trial. The trial court denied that motion without stating its reasons for doing so. Dusty and Le-zanne appealed.
The trial court erred in denying Dusty and Lezanne’s motion for a new trial without providing a written statement of the reasons for its denial. We, therefore, remand this case for the trial court to enter an order in compliance with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), stating its reasons for denying the motion for a new trial. See Southern Pine Elec. Coop. v. Burch, 878 So.2d 1120 (Ala.2003) (remanding case to the trial court for the entry of a Hammond order); and Love v. Johnson, 775 So.2d 127 (Ala.2000) (accord). The trial court is instructed to file a return to this court within 28 days of the release of this opinion, after which Dusty and Lezanne will have 14 days to file a supplemental brief if they choose to do so. Leslie will then have seven days to respond, and Dusty and Lezanne may file a reply brief within seven days of Leslie’s response.
REMANDED WITH INSTRUCTIONS.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

On Return to Remand

MOORE, Judge.
Dusty Polk and Lezanne (Polk) Proctor appeal from a judgment, entered on a jury’s verdict, awarding each of them $1 in compensatory damages on their claim of breach of fiduciary duty asserted against Leslie Polk; Dusty Polk also appeals from the judgment entered on the jury’s verdict on a counterclaim of conversion asserted by Polk Plumbing, LLC (“the LLC”), against Dusty Polk. We affirm in part and reverse in part.

Procedural History

In December 2004, Dusty, Lezanne, and Leslie, along with Yurii Polk, formed the LLC, pursuant to the Alabama Limited Liability Company Act (“the Act”), Ala. Code 1975, § 10-12-1 et seq., by filing the appropriate documents in the Baldwin Probate Court. As the sole members of the LLC, Leslie and his children, Yurii, Dusty, and Lezanne, executed a detailed “Operating Agreement” governing the LLC’s business affairs. According to the Operating Agreement, all the members would act as the “initial managers” of the *366 LLC, charged with the responsibility of handling the day-to-day affairs of the LLC. The Operating Agreement also contained specific provisions governing the transfer of a member’s interest in the LLC and the dissolution and “winding up” of the LLC. It was undisputed that, as originally organized, the members held the following ownership percentages in the LLC: Leslie — 50%; Yurii — 20%; Dusty — 20%; and Lezanne — 10%.
It appears that the family members worked successfully together for a period with Leslie, Dusty, and Yurii performing commercial plumbing work and Lezanne, an accountant, maintaining the financial records and serving as the office manager. In September 2005, the members held a special business meeting. At that meeting, Yurii indicated that he wished to return to “service work,” or residential work; because Leslie and Dusty had no interest in service work, the LLC did not engage in that type of plumbing work. Minutes from that special business meeting indicated that Yurii’s “shares [in the LLC] will be signed over to the president, Leslie Polk. See Amendment 1 to the Operating Agreement for the new distribution of ownership.” All members of the LLC signed those minutes.[1] A document entitled “Amendment 1” was affixed to the Operating Agreement; that document indicated that Leslie Polk held 70% ownership of the LLC, while Dusty continued to hold 20% and Lezanne continued to hold 10%. Le-zanne made the necessary notations on the books of the LLC to record the transfer of 200 shares in the LLC from Yurii to Leslie. The trial court admitted into evidence a copy of the minutes of the special business meeting, a copy of the LLC’s Operating Agreement, as amended, and a copy of the certificate representing the additional 200 shares issued to Leslie.
In April 2007, Leslie became dissatisfied with Dusty and Lezanne. He purported to “fire” them from the LLC, and, shortly thereafter, he prevented them from accessing the LLC’s books and records and the LLC’s offices. After their alleged dismissal in April 2007, it was undisputed that Dusty and Lezanne had no control or input into the operation of the LLC. After dismissing Dusty and Lezanne from the day-to-day operations of the LLC, Leslie continued to operate the business. Dusty began operating as “Absolute Plumbing,” a prior business that he had never formally dissolved or closed.[2] Lezanne accepted employment with an accounting firm.
On July 2, 2007, Dusty and Lezanne sued Leslie and the LLC. In their complaint, they alleged that Dusty held a 20% interest in the LLC, that Lezanne held a 10% interest in the LLC, that Leslie held a 50% interest in the LLC, and that Leslie held Yurii’s 20% interest in trust for distribution among the LLC’s other members and potential future members. Dusty and Lezanne asserted claims of breach of fiduciary duty, willful and wanton conduct, intentional interference with business rela *367 tions, conversion, and the tort of outrage; they also sought a preliminary injunction. Leslie and the LLC answered the complaint asserting counterclaims of conversion of funds belonging to the LLC and breach of the LLC’s Operating Agreement; they also sought an injunction and an accounting. Dusty and Lezanne later amended their complaint to seek partition of certain property they alleged they co-owned with Leslie.
After much procedural wrangling, some of which will be discussed later, the trial court submitted to the jury only Dusty and Lezanne’s breach-of-fíduciary-duty claim against Leslie and the LLC’s conversion claim against Dusty. On September 11, 2009, the trial court entered a judgment on the jury’s verdict, stating in pertinent part:
“9/10/09 — Trial continues. Came the jury of twelve good and lawful people upon their oaths states as follows: (Dusty Polk’s Claim for Breach of Fiduciary Duty) ‘We, the jury, find in favor of the Plaintiff, Dusty Polk, and against Leslie Polk and assess Dusty Polk’s damages as follows: $1.00 Compensatory ... ’; (Lezanne Proctor’s Claim for Breach of Fiduciary Duty) ‘We, the jury, find in favor of the Plaintiff, Lezanne Proctor, and against Leslie Polk and assess Lezanne Polk’s damages as follows: $1.00 Compensatory ...’; (Polk Plumbing LLC’s Counterclaim for Conversion) ‘We, the jury, find in favor of the Counter Defendant Dusty Polk and against the Counter Plaintiff Polk Plumbing LLC ...’;
“Therefore, the Court enters judgment in favor of Dusty Polk and against Leslie Polk in the sum of $1.00. The Court enters judgment in favor of Lezanne Proctor and against Leslie Polk in the sum of $1.00. The Court enters judgment in favor of Dusty Polk and against Polk Plumbing LLC on its counterclaim.
“The Court determines from the evidence that all outstanding liabilities of [the LLC] have been paid. The Court hereby orders the immediate dissolution of [the LLC]. The Court directs the parties to take all necessary steps to formally dissolve [the LLC] within thirty (30) days from the date of this order. The Court orders Chase Dearman to immediately ... disburse from his trust account the balance of the funds belonging to [the LLC] deposited there as follows: a sum equal to 70% of said amount to Leslie Polk; an amount equal to 20% of said sum to Dusty Polk; and a sum equal to 10% of said amount to Lezanne Proctor.”
The trial court, which had served as the trier of fact on the partition claim, concluded that all necessary parties had not been before the court. The trial court ordered Dusty and Lezanne to add all necessary parties in order to proceed with the partition claim.
On September 17, 2009, Leslie and the LLC moved the trial court to order Dusty and Lezanne to disburse funds from their lawyer’s trust account to the members of the LLC according to their ownership interests or for a finding of contempt. The following day, September 18, 2009, the trial court ordered Dusty and Lezanne to post a supersedeas bond or to immediately comply with the September 11, 2009, judgment. Dusty and Lezanne followed that order with a motion to reconsider the September, 18, 2009, order or to stay execution of the September 11, 2009, judgment. On October 11, 2009, Dusty and Lezanne filed a postjudgment motion, pursuant to Rule 59, Ala. R. Civ. P., seeking a new trial. They alleged, among other grounds, that the damages awarded to them by the jury were inadequate. The trial court denied that motion on October 19, 2009.
*368 Dusty and Lezanne filed their notice of appeal on November 3, 2009. That appeal was dismissed on the motion of the appellants because it had been taken from a nonfinal judgment. See Polk v. Polk (No. 2090174, March 9, 2010) - So.3d - (Ala.Civ.App.2010) (table). Upon dismissal of the appeal, Dusty and Lezanne moved the trial court to dismiss their pending partition claim; the trial court granted that motion, thereby rendering the trial court’s judgment final. Dusty and Le-zanne then timely appealed from the denial of their motion for a new trial.[3] Neither Leslie nor the LLC have appealed.

Analysis

In arguing that the trial court erred in denying their motion for a new trial, Dusty and Lezanne assert that the trial court erred in refusing to submit certain issues and claims to the jury, that the trial court improperly instructed the jury, that the jury awarded insufficient damages based on the evidence presented, that the trial court denied their motion for a new trial without stating its reasons, that the trial court entered a judgment inconsistent with the jury’s verdict, and that the trial court granted certain equitable relief that was not sought by any party. We address each argument in turn.
I. Members’ Ownership Interest
Dusty and Lezanne first assert that the trial court erred in not allowing the jury to resolve the disputed issue of each remaining member’s ownership interest in the LLC. At trial, Dusty and Lezanne did not dispute that the minutes from the September 2005 special business meeting of the LLC’s members unequivocally indicated that Yurii transferred his 20% interest in the LLC to Leslie. Likewise, Dusty and Lezanne did not dispute that, as a result of that transfer, Leslie legally held a 70% interest in the LLC. They also did not dispute that they had signed the minutes of that special business meeting, indicating their assent to the transfer of Yu-rii’s interest in the LLC to Leslie.
Dusty, however, denied that Yurii transferred his interest in the LLC to Leslie for Leslie’s individual benefit. Dusty testified without objection that Yurii transferred his 20% interest in the LLC “just to get Yurii off the books and [to] get back to business.” Dusty testified that it was his understanding that Leslie was holding Yurii’s 20% interest in trust for the benefit of all the members of the LLC and for the benefit of two younger family members who were not members of the LLC at that time. Lezanne likewise testified without objection that Leslie was holding Yurii’s 20% interest in trust for two younger brothers.
Yurii testified that he had, in fact, transferred his interest in the LLC to Leslie and that he had signed an affidavit to that effect. He testified without objection, however, that his intent had been to return his 20% interest to the LLC; Yurii explained that, because Leslie held the largest interest in the LLC and because he had received his interest in the LLC from Leslie, he simply returned his interest in the LLC to Leslie. According to Yurii, he had paid nothing for his interest in the LLC and he had made no capital investment in the LLC, so he had not attempted to gain monetarily from the transfer; he had simply gifted his interest away.
At the conclusion of all the evidence, the trial court concluded as a matter of law *369 that Leslie owned a 70% interest in the LLC and instructed the jury to that effect. Dusty and Lezanne objected, asserting that whether Leslie owned a 50% or a 70% interest in the LLC was a disputed question of fact and was, therefore, for the jury to resolve. We agree with Dusty and Le-zanne.
Alabama law requires three elements to establish an inter vivos gift: “ ‘(1) donative intent on the part of [the donor], (2) effective delivery to ... the donee, and (3) acceptance by [the donee].’ ” Porter v. Black Warrior Farms, L.L.C., 976 So.2d 984, 988-89 (Ala.2006) (quoting Weeks v. Weeks, 557 So.2d 1216, 1219 (Ala.1989)); and Dzwonkowski v. Sonitrol of Mobile, Inc., 854 So.2d 598 (Ala.Civ.App.2002) (discussing the principles governing a gift of corporate stock and requiring donative intent), overruled on other grounds, Ex parte First Alabama Bank, 883 So.2d 1236 (Ala.2003). See also Ferer v. Aaron Ferer & Sons Co., 273 Neb. 701, 732 N.W.2d 667 (2007) (affirming trial court’s finding that father had not made a gift of stock to his son because father had not possessed a clear and unmistakable intent to make a gift even though father had executed official corporate records indicating a transfer of stock to his son).
In this case, the evidence undisputedly established that Yurii delivered his shares in the LLC to Leslie and that Leslie accepted those shares. Thus, two of the elements required to establish a gift were met. The evidence as to Yurii’s intended recipient of his shares, however, was highly disputed. One version of the evidence suggested that Yurii intended Leslie to have the shares, while another version indicated that Yurii intended Leslie to hold the shares in trust for the benefit of the LLC or two younger family members. Thus, the disputed evidence presented a question of fact for the jury’s resolution as to Yurii’s donative intent.
In their brief, Leslie and the LLC assert that each member’s percentage of ownership in the LLC was undisputed at trial; as discussed above, the record reveals otherwise. Leslie and the LLC also assert that the trial court “reviewed all of the documents relative to this issue and personally observed the manner, demeanor and credibility of each witness.” When disputed questions of material fact are presented in a jury trial, it is the province of the jury, not the trial court, to resolve those disputes, to determine the credibility of the witnesses, and to decide the weight to place on each witness’s testimony. See, e.g., Colgrove v. Battin, 413 U.S. 149, 157, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (“[T]he purpose of the jury trial ... in ... civil cases [is] to assure a fair and equitable resolution of factual issues.”); MAT Sys., Inc. v. Atchison Props., Inc., 54 So.3d 371, 383 (Ala.Civ.App.2010) (‘““Furthermore, in exercising its discretion, a jury has the exclusive right to weigh evidence, give credibility (or not) to witnesses, and draw inferences from the evidence before it.” ’ ” (quoting Wells v. Mohammad, 879 So.2d 1188, 1193 (Ala.Civ.App.2003), quoting in turn Savoy v. Watson, 852 So.2d 137, 140 (Ala.Civ.App.2002))); and Alabama Pattern Jury Instructions: Civil (“APJI”) 1.03 and APJI 15.03 (2d ed. 1993) (recognizing that the jury is the sole judge of disputed facts and the credibility of witnesses).
To the extent the trial court determined each member’s ownership interest in the LLC as a matter of law, that determination was error. See, e.g., Rule 50(a)(1), Ala. R. Civ. P. (a trial court may enter a judgment as a matter of law against a party only when “there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue”); *370 and Woodruff v. Johnson, 560 So.2d 1040, 1041 (Ala.1990) (recognizing that a directed verdict, now known as a judgment as a matter of law, is properly granted only when there is a complete absence of proof on a material issue or when there are no disputed questions of fact for the jury’s determination). Considering the disputed evidence in the record, we must agree with Dusty and Lezanne that a factual issue for the jury’s resolution was presented as to Yurii’s intent in transferring his 20% interest in the LLC to Leslie and as to each LLC member’s ownership interest. Thus, the trial court erred in refusing to submit that issue to the jury for resolution.
II. Breach-of-Fiduciany-Duty Claim
A. Purported “Firing” of Dusty and Lezanne
Dusty and Lezanne assert that the trial court erred by instructing the jury that it could not consider Leslie’s purported “firing” of them from the LLC as evidence in support of their claim that Leslie had breached the fiduciary duties he owed to them under the LLC’s Operating Agreement and Alabama law. The following colloquy occurred during and after the trial court instructed the jury:
“[Trial court to the jury]: [W]ith respect to the alleged breach of fiduciary duty, ... Alabama is an at-will employment state, which means that an employee may be discharged for any reason or no reason unless there is a special contract of employment. And the dismissal of Dusty Polk and Lezanne Proctor is not part of the breach-of-fiduciary-duty claim.
“[Jury dismissed].
“[Attorney for Dusty and Lezanne]: ... We object to the at-will employee instruction. ... [T]he at-will employer, as far as this is concerned, contradicts that of the Operating Agreement ... the two contradict each other.
“[Trial court]: The court notes the plaintiffs objections ... on the at-will employee ... and overrules the same.”
We agree with the trial court that, in Alabama, employment relationships generally are considered to be at the will of either party. Ex parte Michelin North America, Inc., 795 So.2d 674, 677 (Ala.2001). However, the “employee at will doctrine” applies only in the absence of an employment contract providing for a specific term of employment or providing terms or conditions for dismissal. Burks v. Pickwick Hotel, 607 So.2d 187, 189 (Ala.1992). In this case, Dusty and Lezanne served as managers of the LLC. The LLC’s Operating Agreement, executed in 2004, provided that “[t]he Members may elect one or more of the Members to serve as Managers of the Company for the purpose of handling the day to day details of the Company.... The Managers shall serve for a period of one year or until their replacement or recall is voted by a majority of the Members. The initial managers [are] as follows: [Leslie, Yurii, Dusty, and Lezanne].” (Emphasis added.) Based on the evidence presented at trial showing that the parties continued to act as managers of the LLC after the first year of operation, the foregoing contractual provision guaranteed that Dusty and Lezanne would remain managers until replaced or recalled by a vote of the majority of the members. Hence, their employment as managers of the LLC was not at will and the trial court erred in instructing the jury that it was.
The trial court further erred in not allowing the jury to consider the circumstances of Dusty and Lezanne’s “firing” as part of their breach-of-fiduciary-duty claim. As stated in Part I above, the evidence is in dispute as to whether Leslie owned a majority of the shares of the LLC *371 such that he could have voted to remove Dusty and Lezanne from their managerial positions. However, the record contains no evidence indicating that a vote was ever held to recall or replace Dusty and Le-zanne. Rather, as Leslie testified, he simply acted in disregard of the terms of the Operating Agreement and instead rested on his right as the patriarch of the family to “fire” Dusty and Lezanne for, in his opinion, not working enough. Hence, regardless of the ownership issue, Leslie did not have the authority under the Operating Agreement to terminate the management positions of Dusty and Lezanne in the manner in which he did.
Alabama imposes certain fiduciary duties upon managers of an LLC. In Harbison v. Strickland, 900 So.2d 385, 389-91 (Ala.2004), our supreme court recognized that managers of an LLC owe to the company and to the LLC’s members a duty of loyalty and care and the obligation of good faith and fair dealing. Id. at 389-90. The court in Harbison recognized that those fiduciary duties are deemed implicitly incorporated into the operating agreements of LLCs. The court also recognized that, although members of an LLC are free to reach certain agreements as to their rights and responsibilities, the Act does not allow an LLC’s operating agreement to unreasonably restrict a member’s right to information, to eliminate a manager’s duty of loyalty, or to unreasonably reduce the duty of care. Id. at 390.
In light of the fiduciary duties identified in Harbison, supra, the evidence tending to indicate that Leslie’s “firing” of Dusty and Lezanne interfered with their ability to fulfill their roles as managers in the LLC, and the other evidence addressed above, we agree with Dusty and Lezanne that the trial court’s “at-will” employee instruction was improper and prejudicial to their breach-of-fiduciary-duty claim. Cf. Sullivan v. Hamisch, 81 A.D.3d 117, 915 N.Y.S.2d 514 (2010) (affirming trial court’s denial of motion to dismiss breach-of-fiduciary-duty claim asserted by LLC member against his superior based on circumstances surrounding termination of the member’s employment, but also affirming the dismissal of the member’s wrongful-discharge claim; the court noted that the member had no viable claim of wrongful discharge because no evidence had been presented to establish the existence of an express or implied employment contract and, thus, LLC member was merely an at will employee); and Rowan v. Geotelec, Inc., (No. DBDCV065000468S, May 22, 2009) (Conn.Sup.Ct.2009) (not reported in A.2d) (recognizing that the trial court had properly denied a motion to dismiss a breach-of-fiduciary-duty claim asserted by a founding member of a business against the majority shareholder arising out of the allegedly unexpected and improper termination of the founding member’s employment from the business).
In George H. Lanier Memorial Hospital v. Andrews, 809 So.2d 802, 806 (Ala.2001), our supreme court stated:
“Under Alabama law, ‘ “[a] party is entitled to proper jury instructions regarding the issues presented, and an incorrect or misleading charge may be the basis for the granting of a new trial.” ’ King v. W.A. Brown & Sons, Inc., 585 So.2d 10, 12 (Ala.1991) (citation omitted). When an objection to a jury charge has been properly preserved for review on appeal, as this one was, we ‘ “look to the entirety of the [jury] charge to see if there was reversible error,” ’ and reversal is warranted only if the error is prejudicial. King, 585 So.2d at 12.”
By failing to instruct the jury that it also could consider Leslie’s “firing” of Dusty *372 and Lezanne as evidence in support of their breach-of-fiduciary-duty claim, we conclude that the trial court “probably injuriously affected substantial rights” of Dusty and Lezanne. Rule 45, Ala. R.App. P.; see also, Andrews, 809 So.2d at 806. Therefore, we conclude that the trial court erred to reversal in failing to properly instruct the jury as to Dusty and Le-zanne’s breach-of-fiduciary-duty claim.
B. Insufficiency of Damages Awarded
Dusty and Lezanne next argue that the trial court erred in denying their motion for a new trial because, they say, the amount of compensatory damages awarded to them on their breach-of-fiduciary-duty claim that was presented to the jury for resolution was against the great weight of the evidence. They argue that they presented undisputed evidence indicating that Leslie had breached his fiduciary duty by withdrawing cash in the amount of $262,000 from the LLC and by failing to account for his use of those funds. As discussed above, however, we have determined that the trial court erred in its treatment of Dusty and Lezanne’s breach-of-fiduciary-duty claim. Had the jury properly considered all the evidence supporting their breach-of-fiduciary-duty claim, it might have concluded that a higher amount of compensatory damages and possibly even punitive damages should have been awarded to Dusty and Lezanne. See Systrends, Inc. v. Group 8760, LLC, 959 So.2d 1052 (Ala.2006) (recognizing that punitive damages may be awarded for a breach of a fiduciary duty). Thus, the trial court’s failure to properly instruct the jury on the breach-of-fiduciary-duty claim “probably injuriously affected substantial rights” of Dusty and Lezanne. See Rule 45, Ala. R.App. P.; see also Andrews, 809 So.2d at 806. Thus, we reverse the judgment on the breach-of-fiduciary-duty claim and remand the cause for a new trial.
Dusty and Lezanne further argue that the trial court erred in failing to conduct a hearing, pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), to assess the inadequacy of the jury’s compensatory-damages award. Based on our resolution of the issues above, we pretermit discussion of this issue.[4]
III. Conversion Claim
Dusty and Lezanne next assert that the trial court erred in refusing to submit their conversion claim to the jury. At trial, Dusty and Lezanne sought damages for conversion based on Leslie’s having converted property belonging to the LLC, i.e., cash, credit cards, and personal property, for his personal use. The trial court indicated that it would not submit both the breach-of-fiduciary-duty and the conversion claims to the jury, and it instructed Dusty and Lezanne to select which of those claims they wished to pursue. Without specifically stating an objection to the trial court’s ruling, Dusty and Lezanne selected the breach-of-fiduciary-duty claim for the jury’s consideration.
After the conclusion of all the evidence, the trial court instructed the jury on the claims being submitted to it for resolution; the trial court did not include in those instructions Dusty and Lezanne’s claim of conversion. Dusty and Lezanne did not *373 object to that failure. Despite their earlier failure to object to the trial court’s alleged error in forcing them to choose between their breach-of-fíduciary-duty claim and their conversion claim, their conversion claim remained viable until the jury retired to deliberate because evidence in support of and in defense of that claim had been presented to the jury. Thus, Dusty and Lezanne could have alerted the trial court to its alleged error by objecting to the trial court’s failure to instruct the jury on their conversion claim. They failed, however, to do so.
Even if we assume, without deciding, that the trial court erred by requiring Dusty and Lezanne to choose between their breach-of-fíduciary-duty claim and their conversion claim and by refusing to submit their conversion claim to the jury, we cannot address the issue relating to the conversion claim because Dusty and Le-zanne failed to preserve it for appellate review. Rule 51, Ala. R. Civ. P., provides, in part:
“No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless that party objects thereto before the jury retires to consider its verdict, stating the matter objected to and the grounds of the objection.”
In Chandler v. Virciglio, 997 So.2d 304 (Ala.Civ.App.2008), this court stated:
“As our supreme court has stated, ‘[b]y failing to object before the jury retires to deliberate, a party waives any error in the court’s instructions.’ Adriatic Ins. Co. v. Willingham, 567 So.2d 1282, 1282 (Ala.1990). Furthermore,
“ ‘ “[ujnchallenged jury instructions become the law of the case. Louisville & Nashville R.R. v. Atkins, 435 So.2d 1275 (Ala.1983).” Clark v. Black, 630 So.2d 1012, 1017 (Ala.1993). “The jury is bound to follow such instructions, even if they are erroneous. Lee v. Gidley, 252 Ala. 156, 40 So.2d 80 (1949) (erroneous instructions became the law of the case, and a judgment entered on the jury’s verdict comporting with those instructions would not be reversed on appeal).” 630 So.2d at 1017.’ ”
997 So.2d at 308 (quoting BIG Corp. v. Bean, 669 So.2d 840, 844 (Ala.1995)).[5] In reliance on Rule 51, Ala. R. Civ. P., and Chandler, supra, we cannot address any error in the trial court’s refusal to submit Dusty and Lezanne’s conversion claim to the jury because Dusty and Lezanne failed to preserve that alleged error for appeal.
IV. Wantonness Claim
Dusty and Lezanne also assert that the trial court erred in refusing to submit to the jury their claim of wantonness asserted against Leslie.
“ ‘Wantonness is a question of fact for a jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness. “Wantonness” is ... the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.’ ”
Allen v. Hill, 758 So.2d 574, 576 (Ala.Civ.App.1999) (quoting McDougle v. Shaddrix, 534 So.2d 228, 231 (Ala.1988)). See also Ala.Code 1975, § 6-11-20(b)(3) (defining “wantonness” as “[c]onduct which is car *374 ried on with a reckless or conscious disregard of the rights or safety of others”). “The ‘knowledge’ [of risk of injury] of the defendant is ‘the sine qua non of wantonness.’ ” Norris v. City of Montgomery, 821 So.2d 149, 156 n. 9 (Ala.2001) (quoting Ricketts v. Norfolk Southern Ry., 686 So.2d 1100, 1106 (Ala.1996), quoting in turn Henderson v. Alabama Power Co., 627 So.2d 878, 882 (Ala.1993)).
In support of their wantonness claim, Dusty and Lezanne produced evidence tending to indicate that Leslie had purported to “fire” them from the LLC, which, they claimed, violated the terms of the Operating Agreement, as set out above. Dusty and Lezanne also testified that, since the date of that purported firing, Leslie had prohibited Dusty and Le-zanne from accessing the books of the LLC in violation of the Operating Agreement (see, e.g., ¶ 6.1, requiring the LLC to maintain certain specified records at its offices and to make them available to all members); that Leslie had failed to make distributions to all the members of the LLC in violation of the Operating Agreement (see, e.g., ¶¶ 5.1 and 5.2, requiring all profits and losses to be allocated between the members in accordance with their respective percentage interests); and that Leslie had failed to timely file federal and state income-tax returns for the LLC in violation of the Operating Agreement (see, e.g., ¶¶ 6.1 and 6.4, requiring the balancing of the LLC’s books at the end of the accounting year and the preparation of financial reports and tax returns at specified times).
In responding to Dusty and Lezanne’s allegations of wantonness, Leslie acknowledged that he had signed the Operating Agreement, but he stated he had never read it. He admitted that the Operating Agreement did not grant him the authority to “fire” Dusty and Lezanne, but he testified that he had exercised his right as their father to do so. Leslie also admitted that, although the Operating Agreement stated that the business of the LLC was to be conducted and managed by its members, it had not been so conducted and managed since April 2007 because he had “fired” the LLC’s other two members at that time. Evidence was presented that Leslie had not caused income-tax returns to be timely filed or financial reports to be timely prepared. Leslie also denied any knowledge of the LLC’s income since April 2007.
We conclude that sufficient evidence was presented from which the jury could have reasonably inferred wantonness on the part of Leslie. See, e.g., Jordan v. Holt, 362 S.C. 201, 608 S.E.2d 129 (2005) (evidence indicating that LLC’s manager withheld financial information from members, that he wrongfully excluded members from the LLC’s operation, and that he demanded that the members vacate the LLC’s premises was sufficient to support trial court’s finding against LLC’s manager of willful and wanton misconduct and award of punitive damages). As a result, we conclude that the trial court erred in failing to submit the issue of wantonness to the jury.
V. The LLC’s Conversion Claim
Dusty next asserts that the judgment entered by the trial court on the LLC’s conversion claim was in contravention of the jury’s verdict. To adequately address and understand this issue, we briefly review the evidence presented to the jury in support of the LLC’s conversion claim. On behalf of the LLC, Leslie asserted that, after Dusty’s employment with the LLC had been terminated, Dusty converted funds belonging to the LLC by collecting several payments owed to the LLC from certain customers and depositing some of that money into his lawyer’s trust account and using portions of the *375 money he had collected for purposes other than LLC business.
Dusty admitted that, after Leslie purported to fire him from the LLC, he had collected one payment in the amount of $103,500 from Aldridge Construction payable to and belonging to the LLC. Dusty acknowledged that that payment had been deposited into a trust account maintained by Dusty’s lawyer.
Additionally, it was undisputed that Dusty had authorized his attorney to make certain payments from the funds held in that trust account, including payment of salaries owed to Dusty, Lezanne, and other employees of the LLC that remained outstanding, payments to suppliers of the LLC that remained outstanding, and other recurring debts that the LLC previously had agreed to pay and had paid in the past. Although Leslie admitted that, as a manager of the LLC, Dusty had authority to issue payments on behalf of the LLC, Leslie objected to all the payments authorized by Dusty from the trust account, with the exception of one payment for $36,630 made to McGregor Plumbing, one of the LLC’s suppliers.
Dusty further testified that he had completed several other jobs that he originally had obtained while working for the LLC, but which remained unfinished at the time Leslie purportedly fired him. Dusty testified that he had finished those jobs after he was dismissed from the LLC and after he had begun operating as Absolute Plumbing and that he had credited payments he received upon completion of those jobs to Absolute Plumbing. With the possible exception of $1,200 of the funds received for those jobs, Dusty denied that any portion of those payments belonged to the LLC. Leslie admitted that he did not want any of the moneys earned by Dusty after Dusty had been fired from the LLC.
Upon consideration of this evidence, the jury rejected the LLC’s conversion claim, finding that Dusty had not converted any funds belonging to the LLC by collecting and depositing the $103,500 payment into the trust account, by spending any portion of the funds in that trust account, or by collecting any other payments for jobs originally obtained while working with the LLC. Because it was undisputed that Dusty was a member of the LLC with the authority to act on behalf of the LLC, the jury reasonably could have concluded that Dusty had not acted wrongfully in taking control of the payments he collected and that Dusty had not misused the funds deposited into the trust account. See Baxter v. SouthTrust Bank of Dothan, 584 So.2d 801, 804-05 (Ala.1991) (“To constitute conversion, there must be a wrongful taking or a wrongful detention of interference, an illegal assumption of ownership, or an illegal use or misuse of another’s property.”).
The trial court subsequently ordered Dusty to disburse the balance of the trust account to the members of the LLC in accordance with their ownership interest in the LLC as determined by the trial court, i.e., 70% to Leslie, 20% to Dusty, and 10% to Lezanne. Dusty argues that the trial court’s judgment, which he characterizes as an award of damages to Leslie, invades the province of the jury and violates his 7th Amendment right to a jury trial. We disagree with Dusty’s characterization of the trial court’s judgment.
The jury’s conclusion that Dusty had not converted the funds, i.e., that he had not wrongfully detained those funds and had not interfered or illegally assumed ownership or illegally used or misused the LLC’s property, did not alter the undisputed fact that the funds in the trust account belonged to the LLC. At all times during the trial, Dusty acknowledged that those funds rightfully belonged to the LLC. *376 Thus, it was not error for the trial court to conclude that, although the jury had found in favor of Dusty on the conversion claim, the remaining balance in the trust account continued to belong to the LLC. We, however, must reverse that portion of the trial court’s judgment directing Dusty and Lezanne to disburse 70% of that balance to Leslie because, as discussed above, the jury must first determine the percentage of shares each member owns in the LLC. Only then can the funds be disbursed according to their proper percentages.
VI. Judicial Dissolution
Dusty and Lezanne assert that the trial court erred in declaring that the LLC had no outstanding debts and by judicially dissolving the LLC. Dusty and Lezanne argue that none of the LLC’s members sought dissolution or requested such relief and that the trial court could not have properly determined that the LLC had no debts. We agree in part with their argument.
Section 10-12-38, Ala.Code 1975, a part of the Act, provides:
“On application by or for a member, the circuit court for the county in which the articles of organization are filed may decree dissolution of a limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or operating agreement.”
At the trial, Lezanne testified without objection that she wished to have the LLC legally dissolved. Lezanne’s request, made to the Baldwin Circuit Court, the circuit court for the county in which the LLC had been organized, was sufficient to place the issue of a judicial dissolution before the trial court even though that request was not pleaded by any of the parties. See Rule 15(b), Ala. R. Civ. P. (‘When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.”); and Robbins v. Sanders, 890 So.2d 998 (Ala.2004) (claims by minority shareholders against the majority shareholder that were not asserted in the complaint were deemed tried by consent when there was no objection at trial by the majority shareholder upon claims first being raised during trial). Under the circumstances presented in this case, we find no prejudice to any of the parties by deeming that the pleadings conformed to the evidence presented at the trial.
The record, however, does not conclusively establish that the LLC had no outstanding debts. Additionally, Dusty testified that Leslie had possession and control of certain assets belonging to the LLC. Without evidence as to the extent of the LLC’s assets and liabilities, it was premature for the trial court to order Dusty to disburse 70% of the then-existing trust-account balance to Leslie. Such a distribution was also premature in light of this court’s resolution of the ownership-interest issue addressed above. We, therefore, reverse that aspect of the trial court’s judgment declaring the LLC legally dissolved and ordering a ■ distribution of the trust account; we remand the cause for further proceedings to determine the assets and liabilities of the LLC and for an equitable distribution of any remaining assets of the LLC. Such a distribution can be made only after each member’s percentage interest in the LLC has been determined by the appropriate trier of fact. Because of the manner in which the parties have raised the issues, the legal dissolution of the LLC involves both equitable determinations for the trial court and .factual determinations for the jury.

Conclusion

We affirm the judgment entered on Dusty and Lezanne’s conversion claim and the judgment entered on the jury’s verdict *377 on the LLC s claim of conversion. We, however, reverse the judgment as to the other issues addressed above, and we remand the cause for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in the rationale in part and concurs in the result, with writing.

. Dusty and Lezanne’s remaining claims against the LLC were disposed of by either the entry of a summary judgment or the entry of a judgment as a matter of law in favor of the LLC. Dusty and Lezanne have not appealed the judgments disposing of their claims against the LLC.

. Although the special business meeting was held in September 2005, the members' signatures were dated January 18, 2006. It was undisputed, however, that the special business meeting was held and that all the members of the LLC agreed to the transfer of Yurii’s shares.

. The Operating Agreement expressly authorized its members to maintain business interests in other ventures; thus, Dusty was not in violation of the Operating Agreement by allowing Absolute Plumbing to remain in existence while he owned an interest in the LLC. Additionally, at the trial, Leslie raised no objection to the existence of Absolute Plumbing during the existence of the LLC. In any event, Dusty testified that he did not pursue any business on behalf of Absolute Plumbing until after Leslie purported to dismiss Dusty from the LLC.

. The record from appeal no. 2090174 has been incorporated into this appeal. On October 22, 2010, in case no. 2090591, this court remanded the case for the trial court to provide its reasons for denying the motion for a new trial. See Polk v. Polk, 70 So.3d 363 (Ala.Civ.App.2010).

. But see Pitt v. Century II, Inc., 631 So.2d 235, 238 (Ala.1993) ("[I]n regard to awards exclusively for compensatory damages, our holdings have narrowed the scope of Hammond so that a Hammond hearing is not mandatory where the award is clearly supported by the record.”). In certain cases, however, a trial court may be required to state on the record its reasons for either granting or denying a motion for a new trial based upon the alleged excessiveness or inadequacy of a jury’s verdict even though only compensatory damages are awarded.

. In Chandler, supra, this court considered the debtor’s statute-of-limitations argument on other grounds. See Chandler, 997 So.2d at 308-09. We find no such alternative grounds to be applicable in this case.