MOORE, Chief Justice
(dissenting).
Martin Berks, Environmental Attorneys Group, LLC (“EAG”), and Environmental Attorneys Group, P.C., apply for rehearing of this Court’s no-opinion affirmance of the trial court’s summary judgment. Because I believe that the trial court improvidently entered a summary judgment, I would grant the application for rehearing and reverse this Court’s decision on original submission. Therefore, I respectfully dissent.

I. Facts and Procedural History

In 2001, attorneys Martin Berks and Mark Rowe formed EAG to pursue toxic-tort litigation. Berks and Rowe were the sole members of the limited-liability company, and each retained a 50% membership and voting interest. Gregory Cade was an associate attorney with EAG with no membership interest.
In 2004 Cade left EAG, which then sued him for allegedly attempting to steal its clients and pending toxic-tort cases. Cade and EAG settled that dispute in mediation, agreeing that Cade could take with him certain toxic-tort cases and establishing a formula to divide any fees that might be derived from those cases. Also in 2004, Berks and Rowe went their separate ways, forming new individual firms and doing no new business through EAG.
In 2006, Rowe sued Berks for Rowe’s share of the assets of EAG. As part of a mediated settlement, Berks and Rowe agreed to dissolve EAG. Rowe also accepted a cash payment in lieu of his claim to fees from EAG’s pending toxic-tort cases. In 2007 Rowe joined the law firm where Cade was working — Environmental Litigation Group, P.C. (“ELG”). In November 2008 one of the cases covered by the 2004 settlement agreement between EAG and Cade settled, generating a $2.4 million fee. After Cade received the settlement proceeds, he and ELG sued Berks and EAG seeking to avoid paying EAG any portion of the fee. Cade and ELG argued that Berks had breached the 2004 settlement agreement, thus relieving Cade of the duty to perform his portion of that contract. Berks and EAG counterclaimed, seeking a *459 50% share of the fee pursuant to the 2004 settlement agreement.
Rowe moved to intervene on behalf of EAG, arguing that as a 50% member he had an interest in the $2.4 million fee. However, Rowe later switched his position, arguing that as a member of EAG he had not authorized EAG to hire counsel to defend Cade and ELG’s action and to counterclaim for the $1.2 million fee. Rowe further moved to disqualify counsel for EAG on the ground that he had not voted to permit EAG to sue for the withheld fee. Thus, Rowe effectively became an adversary of EAG, though still nominally a member.
The trial court granted the motion to disqualify counsel, thus disabling EAG from defending the suit and asserting its counterclaims. The court also denied Berks’s personal claim to the assets of EAG as a successor in interest, thus preventing him from seeking a portion of the $2.4 million fee as a third-party beneficiary. The trial court subsequently entered a summary judgment for the plaintiffs based on the reasoning in its order disqualifying counsel. With EAG unable to counterclaim for a portion of the fees, Cade and ELG then dismissed their own remaining claims, concluding the case.

II. Standard of Review

“We review a trial court’s summary judgment de novo, giving the judgment no presumption of correctness.” Baldwin v. Branch, 888 So.2d 482, 484 (Ala.2004). A summary judgment is proper when there is “no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.” Rule 56, Ala. R. Civ. P.

III. Analysis

The trial court, relying on a portion of the Business and Nonprofit Entities Chapter of the Alabama Code,[20] ruled that EAG ceased to exist in 2008, two years after Rowe and Berks agreed to dissolve it. But the part of the Code applicable to limited-liability companies (“the LLC Code”) specifically provides that a limited-liability company (“LLC”) has a “reasonable time” in which to wind up its affairs. § 10A-5-7.03, Ala.Code 1975. A specific statute in the LLC Code would ordinarily prevail over a parallel rule in the Business Corporations Code, even if construed to apply also to LLCs. “Where statutes in pari materia are general and specific, the more specific statute controls the more general statute.” Crawford v. Springle, 631 So.2d 880, 882 (Ala.1993). Surely it was reasonable to keep the entity in existence beyond two years to “wind up” the receipt of fees from cases pending at the time dissolution was undertaken.
•Additionally, Rowe’s effort to prevent EAG from asserting entitlement to fees arising from the 2004 settlement agreement is a forbidden act of disloyalty to EAG. A member in a member-managed LLC owes a fiduciary duty of loyalty, to the LLC.
“A member’s duty of loyalty to a member-managed limited liability company *460 and its members is limited to each of the following:
[[Image here]]
“(2) To refrain from dealing with the limited liability company in the conduct or winding up of the limited liability company’s business as or on behalf of a party having an interest adverse to the limited liability company.”
§ 10A-5-3.0S(f), Ala.Code 1975 (emphasis added). An LLC member also has an “obligation of good faith and fair dealing” in activities in relation to the LLC. § 10A-5-3.03(h), Ala.Code 1975. Further, the governing documents of an LLC may not eliminate the duty of loyalty or the obligation of good faith and fair dealing. §§ 10A-5-3.03(Z)(2) and -3.03(0(4), Ala. Code 1975.
Rowe successfully argued to the trial court that, as a member of EAG with a 50% voting interest, he could prevent the entity from taking legal action to collect funds owed to it. He also successfully argued that by withholding his vote he could prevent EAG from defending itself in the action brought by Cade and ELG. But Rowe’s duty of loyalty to EAG precluded his taking action either for himself or for another “adverse to the limited liability company.” ELG, the law firm for which both Cade and Rowe worked, obviously had an interest adverse to EAG in not sharing the settlement funds Cade had received from cases that were the subject of the 2004 settlement agreement. By using his vote as a member of EAG to prevent EAG from claiming funds that derived from the 2004 settlement agreement between EAG and Cade, Rowe violated his duty of loyalty to EAG.
Because “limited liability companies are creatures of statute,” Harbison v. Strickland, 900 So.2d 385, 389 (Ala.2004), “operating agreements of limited liability companies ... incorporate the provisions of the statutes that allow for the creation of such agreements.” 900 So.2d at 391. “Thus, the plain language of § 10-12-21(Z), Ala.Code 1975 [the predecessor statute to § 10A-5-3.03(Z) ], does not allow an operating agreement for a limited liability company ... to eliminate a manager’s duty of loyalty.... ” 900 So.2d at 390. See also Polk v. Polk, 70 So.3d 363, 371 (Ala.Civ.App.2010) (citing Harbison).
Rowe was not at liberty to employ his voting power to prevent EAG from litigating its right to fees derived from the 2004 settlement agreement. His nonwaivable fiduciary duty of loyalty precludes his effort to act contrary to the interests of EAG. By failing to read the duty of loyalty into the operating agreement for EAG, the trial court entered a summary judgment on a ground forbidden by the LLC Code.

TV. Conclusion

By applying a general two-year winding-up provision from the Business Corporations Code rather than the specific “reasonable time” provision from the LLC Code, the trial court wrongly held that EAG ceased to exist as a legal entity prior to Cade and ELG’s filing their action against it. By failing to read the operating agreement in light of the statutory duty of loyalty, the trial court mistakenly permitted Rowe to stymie EAG’s capacity to defend itself. Because both rulings were legally incorrect, I would grant the application for rehearing, reverse the trial court’s summary judgment, and remand the case for EAG to litigate its counterclaims.

. Sections 10A-1-9.21 and -9.22, Ala.Code 1975 (formerly §§ 10-2B-14.06 and -14.07), provide only a two-year survival of claims against a dissolved domestic entity. They do not similarly bar claims asserted by the entity. By contrast, predecessor § 10-2A-203, Ala. Code 1975, cited by the trial court in its order, eliminated any "remedy to or against such corporation.” (Emphasis added.) The court equated § 10-2A-203, superseded in 1994 and thus not applicable to this case, with §§ 10-2B-14.06 and -14.07 in its limiting effect on claims brought by the dissolved entity. Section 10A-5-8.01(g) (former § 10-12-45), Ala.Code 1975, generally applies “restrictions imposed on professional corporations by the Alabama Professional Corporation Law” to limited-liability companies that render professional services.